1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9            **CENTRAL DISTRICT OF CALIFORNIA**
10                **WESTERN DIVISION**
11

12   EARLINE M. WHITE THOMPSON,        )    No. CV 04-7386-PLA
                                       )
13                   Plaintiff,        )
                                       )
14           v.                        )    **MEMORANDUM OPINION AND ORDER**
                                       )
15   JO ANNE B. BARNHART,              )
     COMMISSIONER OF SOCIAL            )
16   SECURITY ADMINISTRATION,          )
                                       )
17                   Defendant.        )
     _____)
18

19                        **I.**

20                   **PROCEEDINGS**

21           Plaintiff filed this action on September 8, 2004, seeking review of the Commissioner's

22   denial of her application for Supplemental Security Income payments.  The parties filed a Consent

23   to proceed before the undersigned Magistrate Judge on October 27, 2004.  Pursuant to the

24   Court's Order, the parties filed a Joint Stipulation on August 10, 2005, that addresses their

25   positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation

26   under submission without oral argument.

27   /

28   /

## II.

## BACKGROUND

Plaintiff was born on November 13, 1950.  [Administrative Record ("AR") at 89.] She has a tenth grade education.  [AR at 58, 62.] Plaintiff previously worked as a salesperson, print shop supervisor, and foster parent.  [AR at 59-61, 94, 106-09.]

On February 11, 2002, plaintiff filed an application for Supplemental Security Income payments, in which she alleged that she has been unable to work since June 2, 2000, due to Hepatitis C.  [AR at 89-93.]  After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on July 21, 2003, at which plaintiff appeared with counsel and testified on her own behalf. [AR at 38-74.] A vocational expert also testified. [AR at 63-71.] On August 5, 2003, the ALJ determined that plaintiff was not disabled because she retains the ability to perform no more than light work activity.[1]  [AR at 13-19.]  When the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner.  [AR at 3-5.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's

---

[1]     Light work is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

2

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

1    sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

2    and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform

3    past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

4    case of disability is established.  The Commissioner then bears the burden of establishing that

5    the claimant is not disabled, because she can perform other substantial gainful work available in

6    the national economy.  The determination of this issue comprises the fifth and final step in the

7    sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966

8    F.2d at 1257.

9

10   **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

11          In this case, at step one, the ALJ concluded that plaintiff has not engaged in any

12   substantial work activity since the alleged onset of her disability.  [AR at 18.]  At step two, the ALJ

13   concluded that plaintiff has the severe impairment of diabetes mellitus.  [Id.]  At step three, the

14   ALJ found that plaintiff's impairment does not meet or equal the requirements of any of the

15   impairments in the Listings.  [Id.] The ALJ further determined that plaintiff retains the residual

16   functional capacity[2] to perform no more than light work activity, with certain restrictions.[3]  [AR at

17   19.]  At step four, the ALJ determined that plaintiff is unable to perform any of her past relevant

18   work.[4]  [AR at 18.] At step five, the ALJ determined that, based on plaintiff's residual functional

19   capacity to perform no more than light work with certain restrictions, there are a significant number

20

21          [2]    Residual functional capacity ("RFC") is what a claimant can still do despite existing
     exertional and nonexertional limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir.
22   1989).

23          [3]    In addition to determining that plaintiff could lift twenty pounds maximum with frequent
     lifting of up to ten pounds, the ALJ also found that plaintiff has "mild mental limitations with
24   understanding, memory, concentration, attention, and associating with the public.  Further,
     [plaintiff] needs to sit ten minutes per hour and cannot be exposed to excessive gas, dust, and
25   fumes." [AR at 19.]

26          [4]    In the decision, the ALJ made inconsistent statements regarding whether plaintiff had past
27   relevant work. [See AR at 15, 19 (at ¶ 9).] It is apparent from the opinion, however, that the ALJ
     found plaintiff to have past relevant work.  Accordingly, the ALJ's statement to the contrary
28   appears to be an inadvertent error.

4

1    of jobs in the national economy that she can perform. [Id.]  Accordingly, the ALJ found plaintiff not

2    disabled. [Id.]

3

4                                                        V.

5                                        THE ALJ'S DECISION

6          Plaintiff contends that the ALJ: (1) erred in finding that plaintiff's skin abscesses, as well

7    as other conditions, were not severe impairments at step two of the sequential analysis; (2) erred

8    in not considering the combined effect of all of plaintiff's impairments in assessing her residual

9    functional capacity; (3) erred in finding at step five that plaintiff is able to perform other work; and

10   (4) improperly assessed plaintiff's credibility.  Joint Stipulation ("Joint Stip.") at 3.  The Court

11   agrees that the ALJ erred at step two in the disability evaluation, and remands the matter for

12   further proceedings.

13

14   A.      "SEVERE" IMPAIRMENTS

15         Plaintiff asserts that her liver disease, "skin abscesses, persistent cough, muscle spasms[,]

16   ... cramps and difficulty concentrating are physical impairments which should be considered

17   'severe'." Joint Stip. at 4.  According to plaintiff, these conditions "have more than a minimal

18   [e]ffect on [her] ability to perform basic work activities," such as standing, walking, working with

19   others, and  concentrating.  Joint Stip. at 4-5.

20         In the opinion, the ALJ concludes at step two of the sequential analysis that only plaintiff's

21   diabetes mellitus qualifies as a severe impairment.  The ALJ offers no explanation for not finding

22   severe the alleged skin abscesses and the other conditions listed above.

23         A "severe" impairment (or combination of impairments) is defined as one that significantly

24   limits a plaintiff's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520,

25   416.920.  The Supreme Court has recognized that including a "severity" inquiry at stage two of

26   the evaluation process permits the Commissioner to screen out claimants whose impairments are

27   so slight that they are unlikely to be found disabled even if age, education, and experience are

28   considered.  Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994), citing Bowen v. Yuckert, 482

                                                        5

1  U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).  However, overly stringent application

2  of the "severity" requirement would violate the statute by denying benefits to claimants who meet

3  the definition of "disabled."  Corrao, 20 F.3d at 949, citing Bowen v. Yuckert, 482 U.S. at 156-58

4  (O'Connor, J., concurring).

5         An impairment should be found to be "non-severe" only when the evidence establishes

6  merely a slight abnormality, with no more than a minimal effect on ability to work.  Corrao, id.,

7  citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)(citing Social Security Ruling 85-28

8  (1985)).  Despite use of the term "severe" here, most Circuits (including the Ninth Circuit) have

9  held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims."

10  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996), citing Bowen v. Yuckert, 482 U.S. at 153-

11  54; see also, e.g., Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); Hudson v. Bowen,

12  870 F.2d 1392, 1396 (8th Cir. 1989)(evaluation can stop at step two only when there is no more

13  than minimal effect on ability to work).  "[A]n ALJ may find that a claimant lacks a medically severe

14  impairment or combination of impairments only when his conclusion is 'clearly established by

15  medical evidence.'" Webb v. Barnhart, 2005 WL 3544685, *3 (9th Cir. Dec. 29, 2005).

16         Here, the record shows that as far back as February 2002, plaintiff was treated for a

17  "chronic recurrent itch" that caused pustules to form on her body. [AR at 170, 174.] The treating

18  notes at that time reflect that plaintiff reported the itch had been present for the previous year and

19  was worsening.  [AR at 170.] Plaintiff continued to seek treatment for the rash in the following

20  months. [AR at 166, 168.] In September 2002, plaintiff still suffered from the rash and had skin

21  lesions.   [AR at 277.]   In January 2003, plaintiff was diagnosed with medically resistant

22  staphylococcus aureus infection ("MRSA"), and a recommendation was made that she consult

23  with an infectious disease specialist. [AR at 256, 266.] The following month plaintiff continued to

24  be treated for MRSA, and had "weeping abscesses" and new lesions on her body. [AR at 241-43,

25  245.] In March 2003, although plaintiff's MRSA treatment appeared successful, she returned for

26  treatment after developing new lesions. [AR at 212.]

27         Plaintiff testified at the hearing that she is "broken out over [her] body with sores" that make

28  it uncomfortable to have clothes touch her skin. [AR at 48.] She added that they "itch a lot." [AR

6

1   at 50.] She testified, however, that treatment for the MRSA was successful, and that her sores

2   were the symptoms of a different skin condition. [AR at 48.] Still, she indicated that the MRSA

3   infection could reoccur, and she continued to follow certain procedures to keep her household

4   sterile.  [AR at 68-69.]

5          Based on this record of medical evidence, the Court concludes that it was error for the ALJ

6   to fail to address the severity of plaintiff's skin condition at step two of the sequential analysis.  It

7   is reasonably conceivable that an individual suffering from an itchy rash and open sores would

8   have difficulties in the workplace.  This is corroborated by the Vocational Expert's ("VE")

9   testimony, who indicated that it would be problematic placing plaintiff in a job if she had a

10  communicable skin disease.[5]  [AR at 70-71.] Bearing in mind that the step two inquiry is a "de

11  minimis" screening tool, it appears that sufficient medical evidence may exist with respect to

12  plaintiff's skin condition to deem it "severe" for Social Security purposes.  Remand is therefore

13  appropriate to have the ALJ assess whether this threshold has been met.

14         If the ALJ finds that the evidence with respect to plaintiff's skin condition is inadequate or

15  ambiguous, he should "fully and fairly develop the record ... to assure  that [plaintiff's] interests

16  are considered." Webb, 2005 WL 3544685, *3 (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th

17  Cir. 1983) (per curiam)).  Moreover, the Court notes that there is some mention of persistent

18  cough, muscle spasms, and Hepatitis C in the record -- impairments that plaintiff also argues are

19  severe.  [See, e.g., AR at 155, 213-14, 241-42, 278, 274, 277-78, 282, 286.]  If, upon remand,

20  plaintiff continues to allege these impairments, the ALJ's conclusion as to their severity must be

21  clearly established by the medical record.  Webb, 2005 WL 3544685, *3.

22         Furthermore, in the event the ALJ determines that, either singly or in combination, plaintiff

23  suffers from one or more additional severe impairments, the ALJ is instructed to continue with the

24  next steps of the sequential analysis.  Because this may result in changes to plaintiff's RFC and

25  the ALJ's credibility analysis, plaintiff's remaining claims will not be addressed at this time.

26  _____

27        [5]   The Court acknowledges that it is not clear whether plaintiff's current skin condition is
    contagious, or whether she would need to wear gloves in the workplace.  This ambiguity should
28  be resolved on remand.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to determine whether plaintiff's skin condition and other alleged impairments are severe.[6]

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: January 30, 2006

_____
/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[6]    In light of the Court's remand order, the Court does not address plaintiff's remaining contentions of error.

8